POLLY BUTLER, Respondent, *v.* THE VILLAGE OF OXFORD, Appellant.

NEGLIGENCE — WHEN VILLAGE NOT LIABLE FOR PERMITTING SLIGHT DEFECT IN SIDEWALK. Where it appears, that at the junction of a stone and dirt sidewalk in an incorporated village, the surface of the former walk was higher than that of the latter by about two and one-half inches in the center and by about five inches at the edge of the walk, it must be *held* that this was too slight a defect to sustain an action against the village for negligence in behalf of a traveler who had stumbled over the projecting edge and was injured.

*Butler* v. *Village of Oxford*, 101 App. Div. 611, reversed.

(Argued November 16, 1906; decided December 18, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 17, 1905, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Hubert C. Stratton* and *Millard C. Loomis* for appellant. The defect complained of was so slight and so unimportant in

character that it was not negligence for the defendant not to have discovered it and if discovered not to have repaired it. (*Beltz* v. *City of Yonkers*, 148 N. Y. 67; *Corson* v. *City of New York*, 78 App. Div. 481; *Getzoff* v. *City of New York*, 51 App. Div. 450; *Whalen* v. *C. G. Co.*, 151 N. Y. 70; *McInerney* v. *City of Elmira*, 11 App. Div. 354; *Grant* v. *Town of Enfield*, 11 App. Div. 358; *Weston* v. *City of Troy*, 139 N. Y. 281; *McGuire* v. *Spencer*, 91 N. Y. 303; *Salisbury* v. *City of Ithaca*, 94 N. Y. 27; *Seymour* v. *Village of Salamanca*, 137 N. Y. 364.)

*W. B. Matterson* and *Harry J. Mosher* for respondent. The question of defendant's negligence was for the jury. (*Mullins* v. *Siegel, Cooper & Co.*, 183 N. Y. 129; *Durr* v. *N. Y. & H. R. R. Co.*, 184 N. Y. 320; *Rogers* v. *City of Rome*, 96 App. Div. 434; *Fordham* v. *Gouverneur*, 160 N. Y. 541; *O'Brien* v. *City of Syracuse*, 31 App. Div. 328; *Williams* v. *City of Brooklyn*, 33 App. Div. 540.) The fact that no one had ever fallen at the place where the plaintiff fell does not preclude a recovery, but is simply a fact to be considered by the jury with other facts in the case. (*Lloyd* v. *Village of Walton*, 57 App. Div. 288; *Bradner* v. *Village of Warwick*, 91 App. Div. 408.) The defendant was bound to exercise active vigilance toward keeping its streets and sidewalks in proper repair, and under the evidence in this case it became a question of fact for the jury as to whether the authorities had discharged the obligation imposed upon them under the law or not. (*Pomeroy* v. *Vil. of Saratoga*, 101 N. Y. 459; *Williams* v. *City of Brooklyn*, 33 App. Div. 541.)

HISCOCK, J. The plaintiff recovered a judgment against the defendant for alleged negligence in permitting to exist a slight difference in surface level between a stone sidewalk and an adjoining dirt walk, she having stumbled against the more elevated edge of the stone walk. We disagree with the decisions of the learned courts below that this judgment

should be allowed to stand, and think that it should be reversed.

Originally a canal ran through a portion of the village of Oxford. In time this was filled up, and, within certain limits, appropriated to use as a public street. At the point where plaintiff's accident happened business buildings had been constructed upon one side of the street, and in front of one or more of them a stone sidewalk had been laid. This walk in one direction terminated at a building which was known as the "laundry," and from that point on there was only a dirt walk. Immediately beyond the termination of the stone walk was a driveway leading from the street in question across the dirt walk to the rear of the buildings mentioned. The surfaces of the stone and adjoining dirt sidewalk were not flush at their junction, the surface of the former rising above that of the latter by a distance of about two inches and a half in the center and about five inches upon the outer edge of the walk.

Plaintiff had been in attendance upon a circus, and in the evening, when it was dark and rainy, approached over the dirt walk toward the stone one, and in some manner stumbling against the projecting edge of the stone fell and met with her accident. There were electric lights in the vicinity, which threw their light upon the stone and enabled plaintiff to see it and observe that she was approaching and would soon be upon it.

There not only was no evidence that anybody else had ever stumbled at this point, but, upon the other hand, there was evidence of the use of this walk by a large number of people at about the same time when plaintiff fell, and also of general use by the public at other times without any resulting accident.

The general principles which govern the liability of a municipality in such an action as this are perfectly well settled. It is not an insurer and is not expected to maintain walks and streets in such an absolutely perfect condition as to render an accident impossible, but is expected to use reasonable care and prudence in detecting and remedying any defect which it might be fairly anticipated would be dangerous and

liable to cause an accident. As is frequently the case, the only difficulty arises in applying these general principles to specific facts and in determining whether within them a given situation does or does not present actionable negligence.

Weighing the facts here presented, we think it would be altogether too burdensome a rule if we should allow a village like this defendant to be held liable for so insignificant a defect as is here complained of. The nature of the street and the use of the driveway crossing the walk made it quite natural that the stone walk should not be continued beyond the point where it terminated. This being so, there was nothing in the slight difference of grade between the stone and the dirt which reasonably should arouse apprehension of danger to travelers. The photographic exhibits submitted for our inspection make this even more apparent than the evidence. In the center of the walk where people would be the more apt to pass, the difference in grade was so slight as scarcely to be noticeable, and although some attempt was made to establish a caving away of the dirt under the end of the stone, this failed and there was no opportunity for catching the foot and tripping in that way. Ordinary observation teaches us that it would be practically impossible by the expenditure of any reasonable amount of money to prevent the existence in a municipality of such trifling imperfections as this one. As a matter of necessity, in the construction of walks much greater obstructions very commonly exist at curbs, gutters and crosswalks, and it would have required a much higher degree of foresight than the law imposes upon the part of the village authorities to have foreseen the danger of accident to a passer-by. It is a matter entitled to some consideration that the situation complained of was not the result of breakage or wear which had impaired the original condition of the walk, and which fact of itself sometimes quite strongly suggests the inference of negligence. Then too the opinion which it must be assumed the village authorities held that this situation was not dangerous, was confirmed by the experience of the public in using the walk. While of

course the absence of any prior accident at this point would not be conclusive evidence that the construction was a proper one, it still is of much importance in establishing that proposition and in relieving the trustees from any imputation of negligence because they did not change it. They had a right to take into account and be influenced by the experience of the general public in using this walk without any mishap.

Our conclusions thus expressed seem to us to be in line with and sustained by what was decided and written in *Beltz* v. *City of Yonkers* (148 N. Y. 67); *Hamilton* v. *City of Buffalo* (173 N. Y. 72); *Getzoff* v. *City of New York* (51 App. Div. 450); *Corson* v. *City of New York* (78 App. Div. 481).

The *Beltz* and *Hamilton* cases have been so often referred to and cited as to render unnecessary a statement of the evidence upon which it was held in each case as a matter of law that the municipality was not guilty of negligence. It is true that in each of those cases the accident happened in the day time, but as in neither of them was the decision based upon the ground of contributory negligence, that fact is not controlling. Upon the other hand, the court fairly took the position in each case that a hole in a sidewalk caused by wear and breakage between two and three inches deep and several inches in area, was too slight a defect to sustain an action for negligence. While the elevation of the stone above the dirt in the present case was somewhat greater at some points than the depth of the holes in the above cases, this difference is not sufficient to distinguish it from them. And it is to be noted that, as it seems to us, the present case is stronger than those two and others above-cited in the respect already referred to, that in this case there was not as in each of those a deterioration from the original condition of the walk through wear and breakage which might suggest neglect and liability.

In the *Corson* case the plaintiff's heel slipped on the edge of a piece of flagging which was higher than the adjoining one by $2\frac{3}{4}$ inches, as the jury might have found, and it was held that the defect was too inconsiderable to have imposed

upon the authorities the duty of repair even in so large a municipality as Brooklyn.

In *Getzoff* v. *City of New York* the plaintiff fell because her foot went into a hole in the sidewalk which was three inches deep, there being no satisfactory testimony as to its area size. This hole was the result of a break in a flagstone. It was, however, held that the defect was a slight one from which danger could not be reasonably anticipated.

Upon the other hand, we think the case can fairly be distinguished from those of *Mullins* v. *Siegel-Cooper Co.* (183 N. Y. 129); *Fordham* v. *Gouverneur Village* (160 N. Y. 541); *Durr* v. *N. Y. C. & H. R. R. R. Co.*, (184 N. Y. 320) and *Williams* v. *City of Brooklyn* (33 App. Div. 539), which are especially relied upon by the plaintiff.

In the *Mullins* case heavy teaming across a sidewalk had loosened one flagstone so that it rested upon, and was thereby raised three inches above the level of, the adjoining walk. Against this obstruction the plaintiff stumbled. This was a clearly defective condition which had been brought about after the walk was laid, and which was not a natural condition or incident to its original construction. It strikes the mind at once that a person proceeding along the walk would be more apt to stumble and fall over this obstruction than would one coming towards the stone walk in the case at bar be apt to stumble at the slight change of grade which might easily be anticipated. In addition, in the *Mullins* case the dangerous character of the defect had been made evident by persons stumbling over it before the accident.

In the *Fordham* case some plank between one and two inches thick had been laid upon the walk of a bridge which before had a smooth surface, no light or signal being placed there to indicate that repairs were in process. It was held, reasonably enough as it seems to us, that these planks constituted temporary and wholly unexpected and inexcusable obstructions upon what had been a smooth surface, and that accidents might reasonably be expected therefrom was demon-

29

strated by evidence that other people than the plaintiff had stumbled and fallen.

In the *Durr* case there was an oblong hole or depression several inches deep by the side of a plank at a crossing of a railroad by a highway, and the hole was of such a character that a person's foot was liable to catch under the edge of the plank, which was just what did happen to the plaintiff. It is obvious that this was a situation very different from and much more dangerous than that which plaintiff encountered.

In the *Williams* case an isolated flagstone had been left near the middle of the sidewalk, being several inches higher than the latter. Some of the witnesses placed its height above the adjoining walk from five to seven inches. There was also evidence that other people than the plaintiff had fallen over the stone and that the attention of a policeman had been called thereto. This manifestly was a very different case from the present one.

Much space might be occupied in reviewing other cases referred to by the respective counsel, but it is hardly worth while to do this. Each case must necessarily depend upon its particular features, and we have deemed it sufficient to compare the present one with some of the leading authorities cited to our attention for the purpose of making it plain by reference to them that this case is not one where the municipality should be held liable.

The judgment should be reversed and a new trial granted, with costs to appellant to abide event.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur.

Judgment reversed, etc.