KATHERINE HORAN, as Administratrix of the Estate of
MICHAEL HORAN, Deceased, Respondent, v. ALBERT
H. HASTORF, Appellant.

Negligence — injury to driver of truck thrown therefrom
when front wheel went into a rut in planking of a wharf or
approach thereto — facts examined and held that plaintiff
cannot recover.

The complaint alleged that the defendant had a permit from the
city of New York to use a dump at the foot of a street together with the
wharf and the ramp, or approach, thereto and that by the terms of
such permit he agreed to keep in repair the wharf and the ramp and
approach; that defendant allowed the ramp to become out of repair
and in a dangerous condition; and that while plaintiff's intestate,
who was employed by a corporation which was permitted by defendant
to use the dump and ramp, was driving a loaded truck over the ramp
to empty the same at the dump, a wheel of his truck went into a hole
and plaintiff's intestate was jolted off, receiving injuries from which he
died.   Defendant's answer in terms admits that he agreed to keep
the ramp in good order.   On the trial the plaintiff offered in evidence,
without objection, the permit, and by its terms it appears that the
defendant agreed to keep in repair the superstructure of the wharf
and that nothing therein imposed upon the defendant the duty of
keeping the ramp in repair, but the only attempt the defendant made
to correct his admission in the answer to conform with the facts was a
motion to amend his answer at the trial, which was denied as a matter
of discretion.   It also appears that the wharf and ramp were floored
with planking three inches thick, laid over pine sheathing; that
while plaintiff's intestate was driving up the ramp with a loaded truck
in broad daylight a front wheel of the wagon went into a rut on
the surface of the ramp, about two feet long, twelve inches wide and
three inches deep with the top planking worn down to the sheathing.
Held, that the plaintiff cannot recover.

Horan v. Hastorf, 178 App. Div. 888, reversed.

(Argued May 13, 1918; decided May 28, 1918.)

APPEAL from a judgment of the Appellate Division
of the Supreme Court in the first judicial department,
entered April 23, 1917, affirming a judgment in favor
of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Stephen P. Anderton* and *Alfred W. Meldon* for appellant. As the license was in evidence it should have been considered by the court, the same as any other evidence in the case. The license having been admitted by the mutual consent of the parties it should prevail over the pleadings in determining its terms. (*Otten* v. *Man. Ry. Co.,* 150 N. Y. 395; *Holt Bros.* v. *Wolfe,* 19 Misc. Rep. 635; *Frear* v. *Sweet,* 118 N. Y. 454.) The variance between the pleadings and the proof, affecting the terms of the license, was immaterial as to the plaintiff, who created it. Hence, the trial court should have disregarded the variance. If it then decided to submit the case to the jury, it should have directed the fact to be found according to the evidence. At least, it should have ordered an immediate amendment without costs, upon the defendant's motion to amend. (*Place* v. *Minster,* 65 N. Y. 89; Code Civ. Pro. § 539; *Catlin* v. *Gunter,* 111 N. Y. 368.) At most, the defendant could be charged only with failure to perform a duty owing by the city and assumed by him. The measure and extent of that duty was no greater as against defendant than as against the city. (*Gluck* v. *Ridgewood Ice Co.,* 9 N. Y. Supp. 254; 125 N. Y. 728.) The evidence relating to the defendant's negligence in failing to observe and repair the supposed defect in the ramp was insufficient to justify submission of the case to the jury, and the complaint should have been dismissed. (*Hamilton* v. *City of Buffalo,* 173 N. Y. 72; *Butler* v. *Village of Oxford,* 186 N. Y. 444; *Duffy* v. *City of New York,* 149 App. Div. 478; *Henry* v. *City of New York,* 119 App. Div. 432; *Carson* v. *City of New York,* 78 App. Div. 481; *Osterhout* v. *Town of Bethlehem,* 55 App. Div. 198; *Grant* v. *Town of Enfield,* 11 App. Div. 358; *Decker* v. *City*

*of New York,* 147 App. Div. 691; *Brush* v. *City of New York,* 59 App. Div. 12; *Lehmann* v. *City of Brooklyn,* 30 App. Div. 305; *Smith* v. *Mayor, etc.,* 17 App. Div. 438; *Roach* v. *City of Ogdensburg,* 91 Hun, 9.)

*David Steckler* and *Emil Weitzner* for respondent. The specific admission by the answer that the defendant covenanted to keep the ramp in good and sufficient order and repair precludes the defendant from disputing that it did so covenant. There was no consent upon the trial to the substitution of a denial of the making of that covenant for the admission thereof. (*Paige* v. *Willett,* 38 N. Y. 28; *Ferris* v. *Hard,* 135 N. Y. 354; *Kuntz* v. *Schnugg,* 99 App. Div. 191; *Stewart* v. *Sulger,* 174 App. Div. 838; *Mancely* v. *City of New York,* 119 App. Div. 376.) Sections 539 and 540 of the Code of Civil Procedure relating to variance have no application to this case. The motion to amend was addressed to the discretion of the trial court. That discretion was wisely exercised. No question being raised as to the power of the trial court to deny the motion its decision is not subject to review here. (*Miller* v. *Moore,* 1 E. D. Smith, 739; *Browne* v. *Specher Co.,* 24 App. Div. 480; 131 N. Y. 677; *Russell* v. *Conn.,* 20 N. Y. 81; *Barnes* v. *Brown,* 130 N. Y. 372, 386; *Valentine* v. *Healy,* 1 App. Div. 503; *Reiner* v. *Jones,* 38 App. Div. 441; *Williams* v. *U. S. Accident Assn.,* 82 Hun, 268, 276; *Johannsen* v. *Munroe,* 84 Hun, 594, 602; *Phincel* v. *Vaughan,* 12 Barb. 215; *Hendricks* v. *Decker,* 35 Barb. 298; *Dennis* v. *Snell,* 50 Barb. 95; *Zinsser* v. *Columbia Cab Co.,* 66 App. Div. 514.) Whether or not the defendant was negligent in failing to keep the ramp in repair presented a question of fact for determination by the jury and its verdict for the plaintiff cannot now be disturbed. The decisions of this court exempting municipalities from liability for slight defects in sidewalks and

highways have no application to this case. In any event it cannot be said as matter of law that the city of New York would not be held liable for a defect similar to that appearing in the case at bar. (*Beltz* v. *City of Yonkers*, 148 N. Y. 67; *Hamilton* v. *City of Buffalo*, 173 N. Y. 73; *Durr* v. *N. Y. C. & H. R. R. R. Co.*, 184 N. Y. 320; *Butler* v. *Village of Oxford*, 186 N. Y. 444; *Gastell* v. *City of New York*, 194 N. Y. 15; *Terry* v. *Perry*, 199 N. Y. 79; *Lehmann* v. *City of Brooklyn*, 30 App. Div. 305.)

POUND, J. This is an action to recover damages for death alleged to have been caused by defendant's negligence. The complaint alleges in substance that defendant had a license or permit from the city of New York to use and occupy the inshore or most easterly dump on the northerly side of the pier at the foot of West Thirtieth street, Manhattan, together with the right to the use of the ramp or approach thereat and thereto; that by the terms of such license or permit he agreed to keep in repair the superstructure of said wharf property including the said ramp and approach; that he permitted contractors, stevedores and trucking men to use the wharf to discharge and receive garbage and other things upon and from boats; that plaintiff's intestate was employed by a corporation which had the privilege of using the dump and the ramp or approach thereto; that defendant allowed the ramp to become out of repair and in a dangerous condition; that while plaintiff's intestate was driving a loaded truck over the ramp to empty the same at the dump, a wheel of his truck went into a hole and plaintiff's intestate was jolted off, receiving injuries from which he died. The answer in terms admits that defendant agreed to keep the ramp in good order.

On the trial plaintiff offered the permit in evidence, and it was received without objection. By its terms it appears defendant had a permit to use and occupy

" all that certain *public wharf property* * * * to wit: the inshore or most easterly dump at the northerly side of the pier * * * *together with the right to use the ramp or approach thereat.*" Also that defendant agreed to keep in good repair " *the superstructure of said wharf property,*" *i. e.,* the superstructure of the dump. Nothing contained in the agreement imposed upon the defendant the duty of keeping the ramp in repair. Thus plaintiff interjected into the trial a discrepancy between the allegations of her complaint and her proof, which would tend to defeat her entire cause of action, were it not for the admission in the answer, for the complaint charges defendant with no duty to keep the ramp in repair except " under said license or permit." But, for the purposes of the action, the allegations of the complaint admitted by the answer must be taken as true. (Code Civ. Pro. § 522.) Plaintiff did not waive the admission by going, unnecessarily and unwisely, into the proofs. Such admissions are conclusive and evidence inconsistent therewith must be disregarded. (*Jones* v. *Morehead,* 68 U. S. 155, 165; *Paige* v. *Willet,* 38 N. Y. 28, 31; *Tisdale* v. *President, etc., D. & H. Co.,* 116 N. Y. 416, 419; *Pennacchio* v. *Greco,* 107 App. Div. 225, 227.) Plaintiff did not consent to try the issues upon the evidence rather than upon the pleadings. Obviously nothing was more remote from her intention. The inconsistency between plaintiff's evidence and the defendant's admission was not a variance, material or immaterial, which could be corrected on the defendant's motion under the Code of Civil Procedure (§§ 539, 540). Such variances arise between a party's allegations and the proofs offered by him to establish such allegations, and *he* seeks to conform the allegations to the proof. This is an inadvertent admission by the adverse party. The variance is between the defendant's admission and the plaintiff's proofs. Defendant's remedy was to seek relief therefrom

by obtaining leave to amend his answer.   His motion
therefor was denied.   As he had no strict legal right to
make such amendment on the trial, the exception to the
ruling of the court presents no question of law.   He is
the victim of his failure correctly to understand the
duty assumed by him and to require the plaintiff to prove
her case.

The next question is whether the evidence tended to
show that the ramp was not in a reasonably safe con-
dition for the use of plaintiff's intestate and others.
The structure was 125 feet long and 19 feet wide.   It
was built on an incline so that the top was 10 to 12 feet
from the ground.   It was floored with spruce planks,
12 inches wide and 3 inches thick, laid crosswise over
pine sheathing.   Seven or eight hundred loads were
driven up the ramp daily.   Defendant did not use it
exclusively.   The city used it about as much as he did.
Plaintiff's intestate was a teamster.   About midway up
the ramp on his way to the dump with a loaded truck,
the front wagon wheel went into a rut on the surface of
the ramp which was about two feet long, twelve inches
wide and three inches deep.   The top plank was worn
down to the under sheathing.   The jolt threw him off.
The rear wheel went over his body.   From the injuries
thus sustained death resulted.   Defendant having agreed
with the city to assume its duty to keep the ramp in repair,
was bound to exercise the same degree of care that would
be required of the city.   In determining what that
degree of care is we must take heed of the place and the
use for which it was intended and require reasonable
care, considering the ordinary and accustomed manner
of use, nothing more.   Did defendant then have ordinary
regard for the safety of the teamsters?   The accident
did not happen on a dark night.   It happened about
ten o'clock in the morning, in broad daylight.   It was
not cne which common experience would suggest as

likely to happen. The condition of the planking on the ramp presented no greater danger than an ordinary rough pavement or the crossing of a railroad track. The depression was not in any way peculiar or specially calculated to result in injury. The defective condition was due to ordinary wear and tear. The rule has often been stated. When " the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence but, still, an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law." (*Beltz* v. *City of Yonkers,* 148 N. Y. 67, 70.) A hole in the street from one to three feet wide and from *six to ten inches* deep presents a question for the jury when a man is jolted off his wagon and killed (*Faber* v. *City of New York,* 213 N. Y. 411, 414); but, on authority, this hole does not. (*Butler* v. *Village of Oxford,* 186 N. Y. 444.) It seems to have been conceded in the *Faber* case that if the depth of the depression had not exceeded three inches the complaint should have been dismissed. (*Lalor* v. *City of New York,* 208 N. Y. 431.) The line between ordinary care and the absence of it is often dim and wavering and may best be left to the common sense of a jury to trace, but this case does not present any exception to the well-established rule that usual and ordinary slight defects in highways create no legal liability for accidents. (*Terry* v. *Village of Perry,* 199 N. Y. 79, 82.) When the juridical standard of proper care has been maintained, a verdict to the contrary would be indefensible.

The judgment should be reversed and the complaint dismissed, with costs in all courts.

CUDDEBACK and MCLAUGHLIN, JJ., concur, and HISCOCK, Ch. J., concurs in result; CARDOZO, CRANE and ANDREWS, JJ., dissent.

Judgment reversed, etc.