JOHN QUINN, Appellant, *v.* THE STATEN ISLAND RAPID
TRANSIT RAILWAY COMPANY, Respondent.

**Piers and wharves — duty of owner to keep pier reasonably
safe for those invited to use it — action for injuries through
falling into unguarded opening — erroneous dismissal of
complaint.**

1. The owner of a pier to which barges are invited to make fast
in order to receive freight is bound to keep it in reasonably safe con-
dition for those employed in that business.

2. The captain of a barge sent to defendant's dock to be
loaded is impliedly invited to use the structure for lawful and
accustomed purposes and it cannot be said as matter of law that in
going ashore over it for his own purposes he was a mere licensee and
that he used the pier at his own risk. A dismissal of his complaint,
therefore, in an action to recover for injuries received through his
falling into an unguarded opening in such pier, on the ground that
the open hole concealed by the darkness was a danger which he was
bound to avoid, is error.

*Quinn* v. *Staten Island Rapid Transit Ry. Co.*, 170 App. Div. 509,
reversed.

(Argued October 28, 1918; decided November 19, 1918.)

APPEAL from a judgment, entered January 6, 1916,
upon an order of the Appellate Division of the Supreme
Court in the first judicial department reversing a judg-
ment in favor of plaintiff entered upon a verdict and
directing a dismissal of the complaint.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*George F. Hickey* and *Thomas E. Flynn* for appellant.
The plaintiff was lawfully walking on this pier. So long
as it was kept open and a walkway provided for the
portion of the public of which the plaintiff was one, for
the profit of defendant or its lessees, there was upon
defendant the duty of taking care that those who had a
lawful right to go there could do so without incurring

danger to their persons. (*Swords* v. *Edgar*, 59 N. Y. 28; *Clancy* v. *Byrne*, 56 N. Y. 129; *Newall* v. *Bartlett*, 114 N. Y. 399; *Beck* v. *Carter*, 68 N. Y. 283; *De Boer* v. *Brooklyn Wharf Co.*, 51 App. Div. 289; *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Stinson* v. *Edgewater S. M. Co.*, 139 App. Div. 169; *Leary* v. *Woodruff*, 4 Hun, 99; 76 N. Y. 617; *Radway* v. *Briggs*, 37 N. Y. 255, 260; *Junkerman* v. *Tilyou Realty Co.*, 213 N. Y. 404.)

*Lyle H. Hall* and *Carl A. de Gersdorff* for respondent. Plaintiff was not upon this pier on business of defendant, neither was he there by its invitation, either expressed or implied. In his use of said pier for purposes entirely personal on the Sunday night he was injured he was at most a bare licensee. Defendant owed him no legal duty except the general duty to inflict no willful or intentional injury. (*Victory* v. *Baker*, 67 N. Y. 366; *Hargreaves* v. *Deacon*, 25 Mich. 5; *Heskell* v. *Auburn L. & P. Co.*, 209 N. Y. 92; *Cusick* v. *Adams*, 115 N. Y. 59; *Nicholson* v. *Erie R. R. Co.*, 41 N. Y. 525; *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Splittorf* v. *State of New York*, 108 N. Y. 205; *Birch* v. *City of New York*, 190 N. Y. 397; *Fox* v. *Warner-Quinlan Asphalt Co.*, 204 N. Y. 240; *Vaughan* v. *Transit Development Co.*, 222 N. Y. 79; *Oats* v. *N. Y. Dock Co.*, 109 App. Div. 841; *Gunhouse* v. *Frankel*, 153 App. Div. 359; *Bullock* v. *N. Y. C. & H. R. R. R. Co.*, 157 App. Div. 332; *Streuber* v. *Mecham & Son*, 163 App. Div. 574; *Forbrick* v. *Gen. Elec. Co.*, 45 Misc. Rep. 452; *Baker* v. *Byrne*, 58 Barb. 438.)

Pound, J. Plaintiff was the captain of a coal barge. The barge was sent to defendant's dock at St. George, Staten Island, to be loaded. It was lying there over Sunday when the accident in question occurred. The dock is a large double-deck structure extending seven hundred and sixty feet from the shore line. It is forty-

six feet wide from the outer end to a point inshore four hundred and thirty feet where it gradually narrows down to twenty-one feet. The upper part of the structure was used by the Baltimore and Ohio Railroad Company. Coal trains came over it to deliver coal through chutes to barges moored below. The lower part is about eleven feet above the surface of the water at low tide. It sustains the upper part by means of a flooring and clusters of columns which are built upon twelve-inch timbers running across the pier at twelve-foot intervals and projecting eight inches above the floor. The lower part was also used by the railroad employees and by the deckhands, owners, captains, mates or any one on the barges to pass to and from the shore and their boats. One may walk from the outer end to the shore but where the pier narrowed a four-foot walkway was constructed on each side of an unguarded opening. In the evening while on his way from his barge to the shore in the dark for the purpose of attending church services, plaintiff fell into the opening down a distance of ten or twelve feet, and sustained injuries. No other convenient way to go ashore existed. He recovered a verdict in the trial court but the Appellate Division dismissed his complaint on the ground that the open hole concealed by the darkness was a danger which he was bound to avoid.

This was not a public pier, open to all persons, like a highway. It was a pier to which barges were invited to make fast in order to receive coal. Defendant was bound to keep it in reasonably safe condition for those employed in that business. (*Swords* v. *Edgar*, 59 N. Y. 28; *Newall* v. *Bartlett*, 114 N. Y. 399, and cases cited on page 404.) In the darkness of the night the opening was a hidden peril. It is urged that plaintiff's business did not take him on the pier. If he was there merely for his own convenience, he was, as the Appellate Division has held, a bare licensee who cannot recover. (*Vaughan* v. *Transit*

*Dev. Co.*, 222 N. Y. 79.)   If he was there by invitation or on lawful business of interest to both parties he was an invitee.   Business brought him to the pier and, incidentally to his business, he went ashore thereon.   Was he not impliedly invited to use the structure for lawful and accustomed purposes?   If so, it cannot be said that he used the pier at his own risk and that defendant owed him no duty except to refrain from wantonly injuring him. Reasonable prudence and care measured by the circumstances of which defendant was aware would then be the test.   (*Heffron* v. *N. Y. C. & H. R. R. R. Co.*, 223 N. Y. 473, 479.)

The Appellate Division in fixing upon plaintiff the status of a bare licensee perhaps did not visualize the lower part of the pier as shown by the plan and photographs.   The opinion says that a labyrinth of columns covered the lower flooring and that the flooring was discontinued at a point about three hundred feet from the shore.   A labyrinth is a place of winding passages. These columns were spaced at regular intervals.   The flooring extended all the way to the shore, making walkways for the railroad employees which were intended to be used and were used by them as a means of passage. The jury might say from the nature of the construction that an invitation to the bargemen to use it for the purpose of going ashore could also be inferred.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., CARDOZO and ANDREWS, JJ., concur; CHASE, COLLIN and CUDDEBACK, JJ., dissent.

Judgment reversed, etc.